4 F.3d 993
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Clara Blanche BERRYHILL, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
[1] Defendant-Appellee.
 No. 92-5876.
 United States Court of Appeals, Sixth Circuit.
 Sept. 16, 1993.
 
 Before: JONES and GUY, Circuit Judges; and LIVELY, Senior Circuit Judge.
 
 
 1
 Plaintiff-Appellant Clara Blanche Berryhill appeals the district court's grant of summary judgment affirming the Health and Human Services Secretary's (Secretary) decision to reduce the amount of Berryhill's supplemental security income (SSI) benefits. For the reasons stated herein, we remand this case to the Secretary for further consideration in accordance with this opinion.
 
 I.
 
 2
 Berryhill applied for SSI benefits on August 5, 1987. Although the claim was denied initially, an administrative law judge (ALJ) subsequently concluded, in a decision dated December 19, 1988, that Berryhill was disabled and eligible for SSI benefits.
 
 
 3
 Following that decision, Berryhill completed a financial form detailing her family income and resources. In a letter dated February 1, 1989, the Social Security Administration advised Berryhill that her SSI benefits level was being reduced because she and her late husband were receiving shelter valued at fifty dollars a month from their son.
 
 
 4
 Berryhill sought reconsideration. Reconsideration was denied because the administration determined that she and her husband were staying at their son's house, they were paying $100 cash a month in rent to their son, and the fair market value (FMV) for the house if rented was $150 a month. The administration rejected the claim that in lieu of paying rent up to the FMV, she and her husband were rendering services to her son by maintaining his house. On July 11, 1989, Berryhill requested an administrative hearing.
 
 
 5
 After considering written evidence submitted by Berryhill, an ALJ issued a decision on December 27, 1989. The ALJ concluded that Berryhill and her husband had paid $100 a month in rent when the FMV of the shelter was $150 per month. The ALJ also held that Berryhill and her husband did perform maintenance services for their landlord, but the ALJ felt that he was bound by the Program Operations Manual which stated that services performed for the benefit of the landlord do not constitute rent. As a result, the ALJ held that the fifty dollar difference between paid rent and the FMV of the house when rented was a rental subsidy. Thus, the decision reducing Berryhill's benefits level was affirmed.
 
 
 6
 Berryhill sought review of the ALJ's decision with the Appeals Council. In a letter dated October 9, 1990, the Appeals Council advised Berryhill that, although not bound by the directives of the Program Operations Manual, it was prepared to issue a decision finding that services which Berryhill performed "do not constitute additional rental payment." Berryhill submitted additional evidence explaining what services were performed by her and her late husband.[2][3] Upon further consideration of this additional evidence, the Appeals Council changed its tentative determination. In a final decision issued on January 25, 1991, the Appeals Council concluded that Berryhill and her late husband had indeed performed maintenance services and that the difference between the FMV of the shelter and the rent paid in cash was compensation for those maintenance services performed. The Appeals Council then went on to conclude, however, that the compensation was unearned income. Based on the finding that the compensation was unearned income, the Appeals Council affirmed the decision which reduced Berryhill's monthly SSI benefits.
 
 
 7
 Berryhill appealed the Appeals Council decision to the United States District Court on April 30, 1991. The case was referred to a magistrate judge. After the transcript of the administrative proceedings was filed in the district court, Berryhill moved for summary judgment. She asserted that the decision of the Appeals Council was in error.
 
 
 8
 The Secretary, through a United States Attorney, also filed a motion for summary judgment. In his supporting argument, the Secretary conceded that the Appeals Council had made an error of law. At the same time, however, the Secretary claimed, using an alternative rationale, that the ultimate conclusion was correct.
 
 
 9
 In his report and recommendation issued on December 11, 1991, the magistrate judge concluded that the Secretary's action, as explained by the United States Attorney rather than according to the rationale delivered by the Appeals Council, was reasonable. Thus, the magistrate judge recommended that the Secretary be granted its summary judgment motion. The district court accepted the magistrate judge's report and recommendation and issued an order granting summary judgment in favor of the Secretary.
 
 II.
 
 10
 Whether the fifty dollars difference between cash rent paid and the FMV value of the shelter is considered earned or unearned income is of substantial importance in this case. The regulations governing the two types of income allow greater exclusions for earned income. The exclusions from unearned income are specified in 20 C.F.R. Sec. 416.1124(c) (1993). Relevant to this claim, subsection (c)(12) provides that, subject to certain limitations, the first $20 of any unearned income a month are not counted against monthly SSI benefits. The exclusions from earned income are listed at 20 C.F.R. Sec. 416.1112(c) (1993). Subsection (c)(4) provides that "$65 of earned income in a month" will not be counted. Thus, if the $50 per month rent reduction were identified as earned income, Berryhill would not have exceeded the $65 per month exclusion and her SSI benefits would not have been subject to reduction.
 
 A.
 
 11
 In 42 U.S.C. Sec. 1382a(a) (1988), and as is pertinent to this case, earned and unearned income are defined as follows:
 
 
 12
 (1) earned income means only--
 
 
 13
 (A) wages as determined under section 403(f)(5)(C) of this title;(B) net earnings from self-employment, as defined in section 411 of this title; ...
 
 
 14
 (2) unearned income means all other income, including--
 
 
 15
 (A) support and maintenance furnished in cash or kind; ...
 
 
 16
 Section 1382a(a)(1)(A) references 42 U.S.C. Sec. 403(f)(5)(C) (1988), which states:
 
 
 17
 For purposes of this subsection, an individual's wages shall be computed without regard to the limitations as to amounts of remuneration specified in subsections (a), (g)(2), (g)(3), (h)(2), and (j) of section 409 of this title; and in making such computation services which do not constitute employment as defined in section 410 of this title, performed within the United States by the individual as an employee or performed outside the United States in the active military or naval service of the United States, shall be deemed to be employment as so defined if the remuneration for such services is not includible in computing his net earnings or net loss from self-employment.
 
 
 18
 "Wages" are defined in 42 U.S.C. Sec. 409 (Supp.III 1991), and as is relevant to this case, means "remuneration paid after 1950 for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash...." Section 409 details types of remuneration which are not wages, and as is relevant to this case, 42 U.S.C. Sec. 409(a)(6)(A) provides the following exclusion:
 
 
 19
 Remuneration paid in any medium other than cash to an employee for service not in the course of the employer's trade or business or for domestic service in a private home of the employer....
 
 
 20
 42 U.S.C. Sec. 410(a) (Supp.III 1991) defines employment as:
 
 
 21
 The term "employment" means any ... service, of whatever nature, performed after 1950 (A) by an employee for the person employing him ... except that, in the case of service performed after 1950, such term shall not include--
 
 
 22
 (3)(B) Service not in the course of the employer's trade or business, or domestic service in a private home of the employer, ... performed by an individual in the employ of his ... son....
 
 
 23
 Section 42 U.S.C. Sec. 411 (Supp.III 1991) defines net earnings from self-employment to mean "the gross income, as computed ..., derived by an individual from any trade or business carried on by such individual, less the deductions allowed...."
 
 
 24
 The Secretary has promulgated regulations which further define earned and unearned income. 20 C.F.R. Sec. 416.1110 (1993) defines earned income stating, in pertinent part:
 
 
 25
 Earned income may be in cash or in kind.... Earned income consists of the following types of payments:
 
 
 26
 (a) Wages. Wages are what you receive (before any deductions) for working as someone else's employee. Wages are the same for SSI purposes as for the earnings test in the social security retirement program. (See Sec. 404.429(c) of this chapter.) Wages include salaries, commissions, bonuses, severance pay, and any other special payments received because of your employment. They may also include the value of food, clothing, or shelter, or other items provided instead of cash. We refer to this as in-kind earned income. However, if you are a domestic or agricultural worker, the law requires us to treat your in-kind pay as unearned income.
 
 
 27
 (b) Net earnings from self-employment. Net earnings from self-employment are your gross income from any trade or business that you operate, less allowable deductions for that trade or business. Net earnings also include your share of profit or loss in any partnership to which you belong. These are the same net earnings that we would count under the social security retirement insurance program and that you would report on your Federal income tax return.
 
 
 28
 20 C.F.R. Sec. 404.429(c) (1993) cross-references subpart K for an explanation of how wages are determined. Under subpart K are 20 C.F.R. Sec. 404.1041 (1993) and 20 C.F.R. Sec. 404.1043(b) (1993). Section 404.1041 states:
 
 
 29
 (a) The term wages means remuneration paid to you as an employee for employment unless specifically excluded.
 
 
 30
 * * *
 
 
 31
 (e) In certain kinds of employment, cash payments alone count as wages. These types of employment are ... domestic services, and services not in the course of the employer's trade or business.
 
 Section 404.1043 provides, in part:
 
 32
 (b) Meals and lodging. The value of the meals and lodging furnished to an employee by an employer for reasons of the employer's convenience is not wages if--
 
 
 33
 * * *
 
 
 34
 (2) The employee, in the case of lodging, is required to accept lodging on the employer's business premises as a condition of employment.
 
 
 35
 20 C.F.R. Sec. 404.1057(b) (1993) defines domestic service as follows:
 
 
 36
 (b) What is domestic service. Domestic service is work of a household nature done by you in or about a private home of the employer. A private home is a fixed place of residence of a person or family. A separate dwelling unit maintained by a person in an apartment house, hotel, or other similar establishment may be a private home. If a house is used primarily for supplying board or lodging to the public as a business enterprise, it is not a private home. In general, services of a household nature in or about a private home include services performed by cooks, waiters, butlers, housekeepers, governessess, maids, valets, baby sitters, janitors, laundresses, furnacemen, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use.
 
 
 37
 20 C.F.R. Sec. 416.1120 (1993) defines unearned income. It states:
 
 
 38
 Unearned income is all income that is not earned income. We describe some of the types of unearned income in Sec. 416.1121. We consider all of these items as unearned income, whether you receive them in cash or in kind.
 
 
 39
 20 C.F.R. Sec. 416.1121 (1993) provides, in part:
 
 
 40
 Some types of unearned income are--
 
 
 41
 (h) Support and maintenance in kind. This is food, clothing, or shelter furnished to you.
 
 
 42
 Section 20 C.F.R. Sec. 404.1066 (1993) hints at what a "trade or business" means:
 
 
 43
 For you to be covered as a self-employed person for social security purposes, you must be engaged in a trade or business. You can carry on a trade or business as an individual or as a member of a partnership. With some exceptions, the term trade or business has the same meaning as it does when used in section 162 of the [Internal Revenue] Code.
 
 
 44
 (Emphasis in original.)
 
 B.
 THE VARIOUS CONTENTIONS AND DETERMINATIONS
 The Appeals Council's Decision
 
 45
 The Appeals Council first found that the difference between the rent paid and the FMV of the shelter ($50) is not a rental subsidy or in-kind support and maintenance income, but is compensation for maintenance services performed by Berryhill for her son/landlord. Tr. at 8. It then determined whether the compensation is earned income. It noted the earned income definition, 20 C.F.R. Sec. 416.1110, supra, and noted that earned income can be cash or in-kind and includes wages or net earnings from self-employment. Tr. at 9. The Appeals Council then noted that Section Sec. 404.1043(b) excludes "from wages the value of employer furnished lodging if, as is the case here, the lodging i[s] furnished on the employer's business premises for the convenience of the employer and the employee must reside on the premises as a condition of 'employment'...." Tr. at 9.
 
 
 46
 The Appeals Council found Sec. 404.1043(b) applicable and concluded:
 
 
 47
 the value of the $50 per month reduction in rent is not wages under 20 CFR 404.1043(b) and may not be treated as earning income [sic] under 20 CFR 416.1110. 20 CFR 416.1120 provides that all income that is not earned income is unearned income. Although the value of the $50 reduction in rent is not in-kind support and maintenance income, it is still unearned income under 20 CFR 416.1120.
 
 
 48
 Tr. at 9.
 
 Berryhill's Theory
 
 49
 Berryhill argues that the rent reduction is earned income in the form of wages; however she never explains whether the wages are for domestic services, for work in her son's course of business or trade, or for work not in her son's course of business or trade.
 
 
 50
 In the alternative, Berryhill argues that the rent reduction constitutes net earnings from self-employment. Berryhill argues that she does not perform domestic services for her son within the meaning of Section 404.1057(b) and she was not an employee--in a normal master/servant relationship--for the purposes of determining wages. She argues that the work was more like that of an independent contractor. Therefore, she contends that the compensation in the form of reduced rent was actually net earnings from self-employment which is earned income for the purposes of determining SSI benefits.
 
 The U.S. Attorney's Rationale
 
 51
 When Berryhill appealed the Appeals Council decision, the U.S. Attorney said that the Appeals Council conclusion that the income was unearned was correct; however, the rationale used to reach that conclusion was wrong because there is no substantial evidence in the record to establish that Berryhill's son is in the rental property business. The U.S. Attorney's rationale is that even if this court accepted Berryhill's first contention--that the rent reduction is wages--the result would be that the reduction is unearned income. The U.S. Attorney points to 42 U.S.C. Sec. 409(a)(6)(A) and the Secretary's regulation, 20 C.F.R. Sec. 404.1041(e), which both provide that remuneration in any medium other than cash is not wages when the remuneration is for domestic services or for services not in the course of the employer's trade or business.
 
 
 52
 The U.S. Attorney argues that because Berryhill's son is a truck driver, "maintenance performed in or on his house is not service in the course of the son's trade or business." Appellee's Br. at 10. In addition, the U.S. Attorney implies that Berryhill's services are domestic services by arguing that domestic services in the private home of the employer performed by an individual in the employ of her child does not constitute employment according to 42 U.S.C. Sec. 410(a)(3)(B).
 
 
 53
 As to Berryhill's second contention--that the compensation is net earnings from self-employment--the U.S. Attorney contends that pursuant to 42 U.S.C. Sec. 411, the services Berryhill provided could not be pursuant to self-employment because she has never and does not now allege that she was carrying on a trade or business.
 
 III.
 
 54
 Berryhill first argues that the district court erred by entertaining and accepting rationales given by a United States Attorney who was representing the Secretary when those rationales were different from the rationale used by the Appeals Council.
 
 
 55
 The regulations provide that the Appeals Council is the final step in the Social Security Administration's multi-tiered administrative review process. See 20 C.F.R. Secs. 404.900--404.965 (1993). The decision of the Appeals Council carries the weight of a final decision of the Secretary. See, e.g., Cohen v. Secretary of Health & Human Servs., 964 F.2d 524, 528 (6th Cir.1992); Kennedy v. Bowen, 814 F.2d 1523, 1526 (11th Cir.1987) (citing Parker v. Bowen, 788 F.2d 1512, 1516-17 (11th Cir.1986) (en banc)).
 
 
 56
 In this case, the Appeals Council decided that the Berryhills had performed maintenance services and the difference between the cash rent paid and the FMV for the shelter was compensation for those services. The Appeals Council then went on to hold that the $50 difference was unearned income because, pursuant to 20 C.F.R. Sec. 404.1043(b), it was lodging furnished by an employer to an employee who must reside on the premises as a condition of employment. Pursuant to the regulations and the relevant case law, this determination became the final decision of the Secretary.
 
 
 57
 Berryhill appealed that decision to the district court. In response to Berryhill's motion for summary judgment in the district court, the U.S. Attorney, acting on behalf of the Secretary in that forum, acknowledged that there was not substantial evidence to support the Appeals Council decision, namely that there was no evidence that Berryhill's son was in the rental property business. Because of that acknowledgment, the attorney substituted a new rationale in support of the reduction of benefits. The new rationale still treated the income as unearned income, but held that the reason it was unearned income was based on 42 U.S.C. Sec. 409(a)(6)(A) and 20 C.F.R. Sec. 404.1041(e).
 
 
 58
 To support her argument, Berryhill points to Supreme Court precedent. The Supreme Court has stated:
 
 
 59
 the courts may not accept appellate counsel's post hoc rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.
 
 
 60
 Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983) (citation omitted). In addition, the Court has stated:
 
 
 61
 "[A] simple but fundamental rule of administrative law ... is ... that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action.
 
 
 62
 Burlington Truck Lines v. United States, 371 U.S. 156, 169 (1962) (quoting SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)); see also Loyola Univ. of Chicago v. Bowen, 905 F.2d 1061, 1070 (7th Cir.1990) (in case involving a final decision of the Secretary in a dispute over reimbursement of Medicare funds, Seventh Circuit held that it would not entertain Secretary's post hoc arguments on appeal); NLRB v. United States Postal Serv., 833 F.2d 1195, 1201 (6th Cir.1987) (quoting Chenery ).
 
 
 63
 The Secretary counters that the Appeals Council rationale was harmless error. It states: "It is the Secretary's position that inasmuch as the rent reduction clearly constitutes unearned income pursuant to the plain meaning of the relevant federal statutes and regulations as applied to the undisputed facts, ... the Appeals Council's error was harmless." Appellee's Br. at 14. It argues that regardless of the statute and regulations used, the end result would still be that the $50 reduction would constitute unearned income. Therefore, the Secretary says that the harmless error standard is applicable to this case because the " 'mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of the decision reached.' " Id. (quoting U.S. Steel Co. v. United States EPA, 595 F.2d 207, 215 (5th Cir.1979) (quoting Braniff Airways v. CAB, 379 F.2d 453, 466 (D.C.Cir.1967))).
 
 
 64
 We hold that both Berryhill and the Secretary are correct in their formulation of how this court should review a final decision of an agency and post hoc rationalizations by that agency on appeal to the judiciary. Berryhill is correct that, in large part, an agency's decision must be affirmed on the grounds noted in the decision. However, the Secretary is also correct in noting that we can look to see if the error is harmless. In this regard, we find the First Circuit's pronouncement, as stated in Kurzon v. United States Postal Serv., 539 F.2d 788, 796 (1st Cir.1976), persuasive:
 
 
 65
 While agency decisions must be sustained, if at all, on their own reasoning, ... this principle "does not mechanically compel reversal 'when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of [the] decision reached.' " Where a subsidiary finding is unfounded, the court will remand the case to the agency for further consideration only if "the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...."
 
 
 66
 (Citations omitted.)
 
 
 67
 Turning to this case, the Appeals Council's conclusion that the income was unearned rested on the incorrect assumption that Berryhill's son was in the rental property business. In addition, as is noted by Berryhill, there is no proof in the record to show that their son demanded that they live in his house and there is no indication that the Berryhills had to live in this house in order to perform maintenance services. As noted previously, the Secretary contends that, regardless of those mistakes by the Appeals Council, the district court's ruling should be affirmed because the Appeals Council was correct in its ultimate conclusion that the income was unearned income. For the reasons that follow, we hold that the mistake was of a magnitude that bore on the substance of the decision reached. As a result, we hold that the district court erred by adopting the Secretary's post hoc rationalizations for its conclusion that the income was unearned income.
 
 IV.
 
 68
 Berryhill argues that the rationales for treating her compensation as unearned income, as presented by the Appeals Council and the United States Attorney, are erroneous.
 
 A.
 
 69
 One of Berryhill's contentions is that the compensation is best characterized as net earnings for self-employment which, pursuant to 42 U.S.C. Sec. 1382a(a)(1)(B) and 20 C.F.R. Sec. 416.1110, would be earned income. To this end, Berryhill's brief states, "While Berryhill did not hold herself out to do maintenance services in the community in general, she certainly did derive a profit (small as it might be) from performing maintenance services for her landlord." Appellant's Reply Br. at 7 n. 3. Furthermore, Berryhill repeatedly reminds the court that the Social Security laws are to be construed liberally to accomplish its purpose of providing a minimal level of income for the elderly and disabled. See Whaley v. Schweiker, 663 F.2d 871, 873 (9th Cir.1981); Conklin v. Celebrezze, 319 F.2d 569, 571 (7th Cir.1963).
 
 
 70
 The Secretary counters, arguing that Berryhill did not engage in a trade or business. 20 C.F.R. Sec. 404.1066 (1993) provides that "trade" or "business" generally means the same as it is used in Section 162 of the Internal Revenue Code (Code), 26 U.S.C. Sec. 162 (1988 & Supp.III 1991). Section 162 provides, in relevant part, that "there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." The terms "trade" or "business" are not explicitly defined in the Code; however, the courts have formulated general meanings for those terms.
 
 
 71
 "[T]he general test for whether a person is engaged in a 'trade or business' under section 162 has variously been stated to be 'whether the business was undertaken "in good faith for the purpose of making a profit," ' or whether the taxpayer's primary purpose and intention in engaging in the activity is to make a profit."
 
 
 72
 Jackson v. Commissioner, 864 F.2d 1521, 1525 (10th Cir.1989) (quoting Snyder v. United States, 674 F.2d 1359, 1362 (10th Cir.1982) (citation omitted) (quoting Malmstedt v. Commissioner, 578 F.2d 520, 527 (4th Cir.1978))); see also Hayden v. Commissioner, 889 F.2d 1548, 1552 (6th Cir.1989) ("The threshold inquiry in determining whether an activity is a trade or business or is carried on for the production of income is whether the activity is engaged in for the primary purpose and dominant hope and intent of realizing a profit."). What can be gleaned from those meanings is that there must be an intent or motive to make a profit. Hayden, 889 F.2d at 1552; accord Professional Ins. Agents of Mich. v. Commissioner, 726 F.2d 1097, 1102 (6th Cir.1984) (" 'It is well established that the existence of a genuine profit motive is the most important criterion for the finding that a given course of activity constitutes a trade or business.' ") (quoting Lamont v. Commissioner, 339 F.2d 377, 380 (2d Cir.1964)).
 
 
 73
 The Supreme Court has stated that to "determine whether the activities of a taxpayer are 'carrying on a business' requires an examination of the facts in each case." Higgins v. Commissioner, 312 U.S. 212, 217 (1941); see also Jackson, 864 F.2d at 1524 (quoting Higgins ).
 
 
 74
 In this case, there has not been any factual determination regarding whether Berryhill was self-employed for the purposes of determining SSI benefits. The ALJ did not mention the possibility of self-employment on the part of Berryhill. The Appeals Council, while recognizing that earned income could be in the form of net earnings from self-employment, did not discuss whether Berryhill may have been self-employed in this case. Because there has not been a factual determination regarding whether Berryhill was self-employed, we remand for such a determination by the Secretary, pursuant to 20 C.F.R. Sec. 416.1483 (1993).
 
 B.
 
 75
 As stated before, Berryhill also argues that the rent reduction is earned income in the form of wages. If, on remand, the Secretary finds that Berryhill was not self-employed, we agree with the Secretary's latest rationale that the rent reduction would not be earned income. We read the statute and the regulations to hold that in certain types of employment, cash payments alone count as wages. If Berryhill is not self-employed, then the Secretary would be correct in treating Berryhill as one who is doing domestic work in the home of the employer or service not in the course of the employer's trade or business. Thus, because Berryhill's remuneration was not cash, it cannot be counted as wages. While Berryhill is right in stating that this legislation creates peculiar results, we are constrained to follow that legislation. Therefore, on remand, the Secretary may also present its latest contention as to why the income is unearned, if it finds that Berryhill was not self-employed.
 
 V.
 
 76
 REMANDED to the Secretary for further determinations in accordance with this opinion.
 
 
 
 [1]
 Berryhill originally named Louis W. Sullivan, M.D., as Secretary of Health and Human Services. In January 1993, Donna E. Shalala succeeded Sullivan as Secretary of Health and Human Services. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Shalala's name has been substituted automatically as a party
 
 
 [2]
 In a affidavit, Berryhill described what she and her husband did around the house as renters. She stated:
 
 
 [2]
 Normally, a tenant in a rental house will keep the place free of liter [sic], clean floors and counters, and make certain that the premises does not deteriorate beyond normal wear and tear. Of course, my husband and I did all of that
 
 
 [3]
 But, we did more. We insured that fixtures, appliances and other items which were broken were repaired; for example, we made minor structural repairs and that became necessary. My husband would do plumbing or minor electrical repairs when those were necessary. My husband insured that the outdoors was properly kept up including trimming of trees and bushes and maintenance of walk ways. We fixed windows and screens when they broke. Things that we could not do ourselves, we had done by neighbors or professionals
 
 
 [4]
 Because this is our son's house, we took extra care to insure that, through negligence or otherwise, the premises were not worn out any quicker than they would have been. When the heating system or other utilities broke, we fixed them
 Tr. at 253-54 (emphasis added).
 
 
 [3]
 Billy Berryhill, the son of Berryhill, also provided a statement. He stated:
 
 
 [1]
 I do not consider the house to be rental property; I intend to return to live in the home when I am no longer on the road. I actually stay there with my mother when I am not traveling and, at the moment, am home recuperating from an injury which I suffered on the job
 
 
 [2]
 I agreed with my parents some time ago to charge them a rent of $100.00 per month. When asked by the representative of the Social Security Administration, I speculated that I might be able to get $150.00 a month from a stranger if this were strictly rental property and I had no other purpose for the dwelling
 
 
 [3]
 As previously explained, I received value beyond the $100.00 per month from my parents. Of course, they kept the dwelling cleaned. I am not sure that every tenant would do that, but I knew that my parents would
 
 
 [4]
 But, in addition to simple maintenance and cleaning chores, my parents were responsible for repairs to plumbing, the heating system, appliances, and the electrical system when I was gone. Since I am often a long distance away from Lawrence County, I could not be responsible for making these type of repairs when problems arose. By renting the house to strangers, I would certainly have had to charge more because I probably would have had to employ somebody locally who could make these repairs which are the normal obligation of a landlord--at least in this part of Tennessee where we live
 Tr. at 255-56 (emphasis added).