Christopher L. LOHR, Jr., Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant.

No. 07–12474.

United States District Court,
E.D. Michigan,
Southern Division.

May 13, 2008.

Lewis M. Seward, Seward, Tally, Bay City, MI, for Plaintiff.

James A. Brunson, U.S. Attorney's Office, Bay City, MI, for Defendant.

### OPINION AND ORDER

PATRICK J. DUGGAN, District Judge.

On June 8, 2007, Plaintiff filed this lawsuit challenging a final decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits and Supplemental Social Security Income. On September 27, 2007, Plaintiff filed a motion for summary judgment. On October 25, 2007, Defendant filed a motion for summary judgment. This Court referred both motions to Magistrate Judge R. Steven Whalen.

On March 31, 2008, Magistrate Judge Whalen filed his Report and Recommenda-

tion (R & R) recommending that this Court deny Defendant's motion for summary judgment and grant Plaintiff's motion to the extent Plaintiff seeks a remand to the Commissioner for further fact-finding. At the conclusion of the R & R, Magistrate Judge Whalen advises the parties that they may object and seek review of the R & R within ten days of service upon them. (R & R at 16–17.) He further specifically advises the parties that "[f]ailure to file specific objections constitutes a waiver of any further right to appeal." (*Id.*, citing *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of Health and Human Servs.,* 932 F.2d 505 (6th Cir.1991); and *United States v. Walters,* 638 F.2d 947 (6th Cir.1981)). Neither party filed objections to the R & R.

The Court has carefully reviewed the R & R and concurs with the conclusions reached by Magistrate Judge Whalen. Accordingly,

**IT IS ORDERED,** that Plaintiff's motion for summary judgment is **GRANTED** to the extent Plaintiff requests a remand to the Commissioner;

**IT IS FURTHER ORDERED,** that Defendant's motion for summary judgment is **DENIED;**

**IT IS FURTHER ORDERED,** that this matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with Magistrate Judge Whalen's R & R.

### REPORT AND RECOMMENDATION[1]

R. STEVEN WHALEN, United States Magistrate Judge.

Plaintiff Christopher L. Lohr, Jr. brings this action under 42 U.S.C. § 405(g) chal-

---

1. The Court acknowledges the substantial contributions of Law Clerk Amy J. Hum-

lenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be DENIED and Plaintiff's Motion for Summary Judgment GRANTED to the extent that the case is remanded for further fact-finding consistent with this Recommendation.

### PROCEDURAL HISTORY

On February 10, 2004, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of July 10, 1996[2] (Tr. 45–47, 356–358). After the denial of his claim, Plaintiff filed a request for an administrative hearing, held on November 14, 2006 in Flint, Michigan before Administrative Law Judge ("ALJ") Joel Fina (Tr. 377). Plaintiff, represented by attorney Lewis Seward, testified, as did Vocational Expert ("VE") Stephanie Leech (Tr. 381–407, 407–415). On December 20, 2006, ALJ Fina determined that Plaintiff was not disabled, finding Plaintiff capable of performing his past relevant work as a landscape laborer, retail stock person, clerk, kitchen helper, piler, assembler, and material handler (Tr. 21–22). On May 12, 2007, the Appeals Council denied review (Tr. 5–7). Plaintiff filed for judicial review of the final decision on June 8, 2007.

### BACKGROUND FACTS

Plaintiff, born July 10, 1982, was age 24 when the ALJ issued his decision (Tr. 45). He received a general equivalency diploma ("GED") and performed a variety of unskilled and semi-skilled jobs (Tr. 108, 113). Plaintiff alleges disability to due to Attention Deficit Disorder ("ADD") (Tr. 107).

### A. Plaintiff's Testimony

Plaintiff, single, testified that he had a seven year old son, adding that his current girlfriend was currently pregnant with his second child (Tr. 381). Plaintiff, 5′ 5″ and 136 pounds, stated that he had received his GED (Tr. 382). He denied taking special education classes while in school, but indicated that he had been diagnosed with ADD at the age of "six or eight," at which time he began taking medication for his condition (Tr. 383). He reported that his grades "went down progressively" as he matured, but denied substance abuse (Tr. 383). He stated that he read "pretty good," but had poor math skills, adding that he did not maintain a checking account (Tr. 384).

Plaintiff reported that he had worked "sporadically" as a personal care attendant ("PCA") since 2002, testifying that the job entailed performing personal care tasks for a wheelchair bound individual for approximately 11 hours each week (Tr. 385–286). He reported that he also worked as a grinder in a sheltered workshop 32 hours each week (Tr. 391–392). He testified that he had also worked briefly as a beet piler and beet receiver, but lost the job because of attendance problems, adding that he lost a landscaping job because he talked too much and a pizza-making job after dropping two pizzas "on the floor on a Super Bowl Sunday" (Tr. 388).

Plaintiff testified that he was able to take care of his personal care needs, but

phreys to the preparation of this Report and Recommendation.

**2.** The onset date was amended to January 21, 2004 and later amended a second time to April 1, 2001.

performed laundry and housekeeping chores on a "sporadic basis," indicating that his lack of concentration made it difficult for him to stay on task (Tr. 393–394). He admitted that he continued to hold a driver's license, drive regularly, shop, order takeout food, go to the movies, and play a military simulation game ("Air Soft"), acknowledging further that he played video games up to six hours each day (Tr. 394–399).

Plaintiff testified that he preferred to work in a "routine" situation, indicating that he experienced difficulty "following directions from people" (Tr. 400). He reported socializing regularly with a small group of friends, but indicated that his relationship with his girlfriend was marked by daily fighting (Tr. 402). Plaintiff stated that he currently took Concerta for concentrational problems and Seroquel as a sleep aid (Tr. 404). He indicated that he found either working with the general public or at a steady pace somewhat stressful (Tr. 405). He reported that his monthly visits with Dr. Bagonavich were helpful, denying that he saw other physicians on a regular basis (Tr. 406). Plaintiff alleged that his condition had "ruined relationships" and had affected his ability to work (Tr. 407).

## B. Medical Evidence

### 1. Treating Sources

January 2001 treating notes by Bayside Health Center indicate that Plaintiff was prescribed Ritalin[3] (Tr. 218). In April 2001, Plaintiff attributed ongoing concentrational problems to either "too much or too little" Ritalin (Tr. 212). Between June 2001 and June 2003, treating notes show that Plaintiff continued to received prescriptions for Ritalin (Tr. 173–210).

A July 2004 psychiatric evaluation, noting that Plaintiff had taken Ritalin since he was five, noted symptoms of impulsiveness, anxiety, depression, and hyperactivity (Tr. 265). Plaintiff reported that Ritalin did not "control his symptoms anymore" (Tr. 265). However, he exhibited an appropriate effect without disassociation or delusional ideation (Tr. 266). Diagnosing ADHD, Plaintiff's examiner assigned him a GAF of 55 and recommended an increased dosage of Ritalin[4] (Tr. 266). In August 2003 Plaintiff, appearing "appropriately dressed" and "pleasant" at a medication review, was assigned a GAF of 50 due to ADHD and financial stressors[5] (Tr. 262). October 2003 medication review notes indicate that he was "not as edgy," after receiving a prescription for Concerta the previous month (Tr. 260–261). His GAF was upgraded to 55 (Tr. 260). Plaintiff reported the following month that he was "aggressively looking for a job" due to financial problems (Tr. 259).

In December 2003, counseling notes indicate that Plaintiff was unable to " 'remember many details' " of his childhood due to over-medication (Tr. 248). Plaintiff exhibited symptoms of anxiety and hopelessness, but was appropriately dressed, stating that he "would like to find a job"

---

**3.** Ritalin is also referred to as Methylphenidate in some of Plaintiff's treating records.

**4.** A GAF score of 51–60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* at 34 (*DSM–IV–TR*) (4th ed.2000).

**5.** A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders—Text Revision*, 34 (*DSM–IV–TR*) (4th ed.2000)

(Tr. 249, 252). He was assigned a GAF of 50 (Tr. 253). In April 2004, Plaintiff opined that his life was "going well" (Tr. 232). Later the same month, T. Liam, M.D., noted that antidepressants should be considered (Tr. 227).

An August 2004 psychiatric evaluation by Tahira Jabeen, M.D., noting that Plaintiff experienced mood swings, found that Plaintiff experienced bi-polar disorder as well as ADHD (Tr. 352–353). Plaintiff reported that Concerta helped him focus and control his mood swings (Tr. 352). Notes from a February 2005 medication review indicate that Plaintiff no longer experienced mood swings and was able to focus (Tr. 349). The same notes indicate that Dr. Jabeen found the absence of either depression or mania (Tr. 349). The following month, Plaintiff reported depression as a result of his grandmother's health problems and a recent breakup, and was prescribed Lexapro (Tr. 348). Notes from the following month's review show that Plaintiff declined to take Lexapro[6] (Tr. 347). In June, July, August, and September 2005 Dr. Jabeen placed Plaintiff's GAF at 62, noting that his mood disorder was in remission (Tr. 323, 327, 330, 333).[7] In September 2006, Marina Bogdanovic, M.D., found no indications of depression or psychosis, with "good" focus (Tr. 305).

### 2. Consultive and Non–Examining Sources

In July 2004, case development notes by the SSA show that due to ADHD, Plaintiff had been assigned a GAF of 55 in July 2003 (Tr. 288). The notes observe further that although Plaintiff alleged concentrational difficulties, he continued to cook, perform chores, shop, and attend to his personal needs (Tr. 288). The same month, a Psychiatric Review Technique found that Plaintiff experienced ADHD, resulting in the B Criteria limitation of *moderate* difficulties in maintaining concentration, persistence, or pace (Tr. 277). The assessment found the absence of other B or any C Criteria limitations (Tr. 277–278). A Mental Residual Functional Capacity Assessment performed the same day found that Plaintiff's ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; and work in coordination with or proximity to others without being distracted by them was *moderately* limited (Tr. 282). Plaintiff's ability to interact socially and adaptive abilities were deemed unimpaired (Tr. 282–283). The assessor concluded that although Plaintiff was unable to perform "complex or technical tasks," he could perform "unskilled, routine tasks on a [sustained] basis," noting that Plaintiff's statements were credible "[within his] understanding of his condition" (Tr. 283).

### C. Vocational Expert Testimony

VE Stephanee Leach found that Plaintiff's past relevant work as a landscaper laborer, automobile porter, and assembler

---

6. In May 2005, Plaintiff's therapist assigned him a GAF of 40, indicating "[s]ome impairment in reality testing or communication ... or major impairment in several areas, such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* at 34 (*DSM–IV–TR*) (4th ed.2000) (Tr. 346).

7. GAF scores in the range of 61–70 indicate "some mild symptoms [of depression] or some difficulty in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* at 32 (*DSM–IV–TR*), 30 (4th ed.2000). However, again, the undersigned notes that Dr. Jabeen's assessments contradict his therapist's December, 2005 discharge assessment finding a GAF of 50 (Tr. 318).

was exertionally light and unskilled; his work as a pizza baker, light and semi-skilled; work as a stock retail center clerk, kitchen helper, piler, and tear room worker, medium and unskilled; and work as a PCA, semi-skilled at the heavy exertional level [8] (Tr. 409).

The ALJ then posed the following hypothetical question:

"[P]lease assume a person of the claimant's age, education, and work experience and skill set who is able to perform work at all exertional levels. And work which is limited to simple routine repetitive tasks performed in a work environment free of fast paced production requirements. Involving only simple work related decisions. And with few, if any, work place changes. Can an individual with these limitations perform claimant's past relevant work as claimant performed it or as customarily performed?"

(Tr. 410). The ALJ later amended the hypothetical question to include a need for "close supervision, which is defined as having a supervisor checking the person's work at least hourly" (Tr. 412).

The VE found that the hypothetical individual could perform Plaintiff's past relevant work as a landscape laborer, stocker, and tear room worker as well as other jobs in the regional economy including 5,500 farm worker and food preparation jobs in regional economy (reduced by 10 percent for the need for hourly supervision) (Tr. 411, 413). In response to questioning by Plaintiff's attorney, the VE found that if Plaintiff required redirection three to four times an hour or strayed off task half the

time, all competitive employment would be precluded (Tr. 415).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Fina determined that Plaintiff experienced the severe impairments of attention deficit hyperactivity disorder and a mood disorder, finding however, that Plaintiff's impairments did not meet or medically equal one of the listed impairments found in Appendix 1, Subpart P, Regulation No. 4 (Tr. 19).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

"perform a full range of exertional work with the following non-exertional limitations: work that is limited to simple, routine, repetitive tasks, performed in a work environment free of fast paced production requirements, involving only simple, work-related decisions, and with few, if any, work place changes. Claimant is also limited to work needing close supervision, which is defined as having a supervisor check the person's work hourly"

(Tr. 19).

The ALJ found that Plaintiff could perform his past relevant work as a landscape laborer, retail stock person, clerk, kitchen helper, piler (as performed), assembler, and material handler (Tr. 21).

The ALJ supported his determination by finding that although Plaintiff's "abilities of concentration, persistence and pace" were moderately limited, he was nonetheless capable of simple, unskilled work (Tr. 21). He cited Plaintiff's hearing

---

8. 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium*

work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds".

testimony, noting that Plaintiff opined that "he could work if he did not have to be around a lot of people" (Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. § 405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir.1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir.1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. § 416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. SSR 06–3p

Plaintiff argues that the ALJ erred by omitting mention of the opinions of his supervisors at both his PCA and sheltered employment positions that he was unable to hold competitive employment. *Docket # 8,* at 4–7 (*citing* Tr. 375, 376). Citing SSR 06–03p, Plaintiff contends that the ALJ's failure to consider the opinions of individuals observing him in his work environment invalidates the conclusion that he could perform his past relevant work. *Id.*

In response, Defendant argues that substantial evidence, including treating source records and Plaintiff's own testimony, easily supports a non-disability finding. *Docket # 9* at 6. Defendant also claims that "the ALJ explicitly considered the opinion evidence" of Plaintiff's supervisors. *Id.* at 7 (citing Tr. 19).

SSR 06–03p, effective August 9, 2006, states in relevant part that "[o]pinions from 'non-medical sources' who have seen the individual in their professional capacity should be evaluated" using "the applicable factors" consisting of the length and frequency of the professional relationship as well as the source opinion's consistency with other evidence, relevance, credibility, expertise in the claimant's impairment and any other pertinent factors. *Id.* at \*4–5. The Regulation states further that "[s]ince there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions ... from 'non-medical sources' who have seen the claimant in their professional capacity." *Id.* at \*6. The Regulation states further:

> "[a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."

*Id.; See also Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 541 (6th Cir. 2007).

 First, putting aside the opinion letters of Arnold and Hayes, I am inclined to agree with Defendant that substantial evidence, consisting of Plaintiff's treating records and testimony, would support a non-disability finding. However, because "[s]ubstantiality of the evidence must be based upon the record taken as a whole," the neglect of critical evidence supporting disability constitutes error. *Davis v. Ap-*

*fel,* 133 F.Supp.2d 542, 547 (E.D.Mich. 2001).

Next, contrary to Defendant's claim that the ALJ addressed the opinion letters, the administrative decision omits *any* reference whatsoever to either Hayes or Arnold's opinion that Plaintiff was incapable of competitive employment. Although Defendant asserts that the administrative decision mentions the letters at page 19 of the transcript, in fact, the decision notes only that "the amounts earned [performing sheltered employment] fall short of the amount presumed to be substantial gainful activity within the meaning of the Social Security Act and regulations" (Tr. 19).

Further, I disagree with Defendant's claim that the Hayes' and Arnold's opinions were incorporated by reference to the Mental Residual Function Capacity Assessment. Admittedly, the June 2004 Assessment found that "3rd party noted [claimant] talks incessantly (sic) needs continual reminders, frustrates people around him, difficulty completing tasks/following instructions/concentrating" (Tr. 285), consistent with Arnold's statement that Plaintiff "often will go off task" and "will talk about a subject and just will not stop talking" and/or Hayes' statement that Plaintiff "has tendency to leave his work station and wander off and talk to others" (Tr. 375–376). In turn, the administrative decision cites the Mental Residual Functional Capacity examiner's finding that "the claimant could do unskilled, routine work in a quiet environment with few co-workers on a sustained basis" which appears to comports in part with Arnold and Hayes' findings (Tr. 21 citing 283).

However, Defendant's "incorporated by reference" argument fails on the obvious basis the Mental Residual Functional Capacity Assessment, performed in June 2004, could not possibly have alluded to the opinion letters of Arnold and Hayes,

both dated October 31, and October 2, 2006 respectively. Because the administrative decision gives no indication that Arnold and Hayes' opinions were even considered, the requirements of SSR 06–03p were unmet.

### B. The Omission in Question Constitutes Reversible Error.

■ The "Sixth Circuit has no binding precedent establishing ... the harmless error rule in the Social Security disability context ..." *Pechatsko v. Commissioner of Social Security*, 369 F.Supp.2d 909, 914 (N.D.Ohio 2004). However, as noted by *Pechatsko*, at 914, *Berryhill v. Shalala*, 1993 WL 361792, *7 (6th Cir.1993) states persuasively that "the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture'" *Berryhill* at *7 (*citing Kurzon v. United States Postal Serv.*, 539 F.2d 788, 796 (1st Cir.1976)).

This Court has often noted that "where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 547 (6th Cir.2004); *citing NLRB v. Wyman–Gordon*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (plurality opinion). Further, "[w]hile it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each ... opinion, it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Commissioner of Social Security*, 2006 WL 305648, *8–9 (6th Cir.2006) (*citing Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)).

■ Nonetheless, a plain reading of the Regulation indicates that the failure to consider, much less even mention Arnold's and Hayes' opinions constitutes reversible error. First, although the Regulation does not in all cases require the ALJ to explain the weight accorded a non-medical source, "the adjudicator generally should explain the weight given to opinions from these 'other sources' ... *when such opinions may have an effect on the outcome of the case.*" SSR 06–03p at *6 (emphasis added).

In applying the factors to consider in weighing a non-medical judgment, Arnold's and Hayes' opinions should be accorded significant weight. Arnold and Hayes both reported interacting with Plaintiff multiple times each week in the course of his employment (Tr. 375–376). Arnold spoke not only in his capacity as Plaintiff's employer at his PCA job, but additionally in his position as a 30–year employee at the sheltered workshop (Tr. 375). Thus, his opinion that Plaintiff's "problems with memory would certainly prevent him from being competitively employed" would be properly accorded significant weight under the Regulation (Tr. 375). Likewise, Hayes' expertise as an "Employment Training Specialist" at the sheltered workshop would entitle her opinion to significant weight (Tr. 376).

Moreover, although the administrative decision's RFC contained a portion of the limitations found by Arnold and Hayes (such as the need for close supervision and simple, routine work) the RFC is tainted by its failure to even consider the *additional* limitations stated by Plaintiff's employers. For instance, in contrast to the ALJ's finding that Plaintiff required *hourly* supervision, Arnold stated that Plaintiff "needs *constant* reminders to stay on task" (Tr. 19, 375) (emphasis added). Likewise, Hayes observation that "[d]uring work

breaks, it is not uncommon for him not to return to his work station when the work break is over" states a degree of limitation not present in the current RFC (Tr. 376). If credited, these findings, read in conjunction the VE's finding that all competitive employment would be precluded if Plaintiff needed redirection three to four times an hour, point to a finding of disability (Tr. 415).

 In closing, because proof of disability is not "overwhelming," the neglect of even critical evidence does not automatically entitle Plaintiff to an award of benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994). Nonetheless, the ALJ's failure to consider these opinion taints his nondisability finding. Accordingly, this case should be remanded for further fact-finding consistent with this Report and Recommendation.

### IV. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be DENIED and Plaintiff's Motion for Summary Judgment GRANTED to the extent that the case is remanded for further fact-finding.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right to appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th

Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response should not be more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.