**Andre LOVE, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**Case No. 1:08–cv–242.**

United States District Court,
W.D. Michigan,
Southern Division.

March 4, 2009.

Frederick W. Bleakley, Bleakley Law Offices PC, Muskegon, MI, for Plaintiff.

Matthew L. Meyer, U.S. Attorney, Grand Rapids, MI, for Defendant.

## ORDER

### Adopting the R & R without Objection; Remanding the Case to the Agency under 28 U.S.C. § 405(g) Sentence Four; Terminating the Case

PAUL L. MALONEY, Chief Judge.

Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to United States Magistrate Judge Ellen Carmody, who issued a Report and Recommendation ("R & R") on Tuesday, February 10, 2009.

■ " 'Ordinarily, parties must file objections and exceptions to the magistrate's report within ten days of its issuance.' " *x v. Comm'r of SSA*, 2008 WL x (W.D.Mich. 2008) (Maloney, C.J.) (quoting *Rodger v. White*, 1990 WL 95624, at *2 (6th Cir. July 11, 1990) (citing 28 U.S.C. § 636(b)(1)). *See also x v. Comm'r of SSA*, 2008 WL x (W.D.Mich.2008) (Maloney, C.J.) (quoting *Deruso v. City of Detroit*, 121 Fed.Appx. 64, 66 n. 2 (6th Cir.2005) ("The Rule requires parties to file objections to a magistrate's report and recommendation within ten days of the time the report is filed.") (citing FED.R.CIV.P. 72(a))) and citing W.D. MICH. LCIVR 72.3(b)).

W.D. MICH. LCIVR 5.7(d)(i)(ii), entitled Service of Electronically Filed Documents–Service on Registered Attorneys, states in pertinent part, "Consequently, service of an electronically filed document upon a registered attorney is deemed complete upon the transmission of an NEF to that attorney under subsection (i)(iv) of this rule and no certificate of service should be filed." Accordingly, the court finds that plaintiff's counsel was served with the R & R on the same date that it

was issued and electronically filed by the Magistrate Judge. *See Swift v. SSA,* 2009 WL 198526, *1 (W.D.Mich. Jan. 27, 2009) (Maloney, C.J.) (applying same local rule, and finding that counsel was served with R & R on the same date that the Magistrate Judge issued and e-filed it); *Malik v. AT & T Mobility, LLC,* 2009 WL 198710, *6 (W.D.Mich. Jan. 23, 2009) (Maloney, C.J.) (applying same rule, and finding that counsel was served with adversary's motion for summary judgment on the same date that the adversary e-filed the motion).

Rule 6 begins, "In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event or default from which the designated period of time begins to run shall not be included." FED.R.CIV.P. 6(a). Thus, the ten-day objection period began on Wednesday, February 11, 2009, the day *after* counsel were electronically served with the R & R.

Rule 6 further provides, "When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." FED.R.CIV.P. 6(a). Thus the court excludes February 14 (Saturday), February 15 (Sunday), and February 16 (Monday, Presidents' Day). Days 2 through 5 ran from Tuesday, February 17 through Friday, February 20. The court excludes Saturday, February 21 and Sunday, February 22. Days 6 through 10 ran from Monday, February 23 through Friday, February 27.

Thus, under FED.R.CIV.P. 6 alone, the ten-day period for filing objections expired at midnight on Friday, February 27, 2009.

■■■ However, the plaintiff seems to be entitled to an extra three days because the Rules still allow three days for her brief to "arrive" at the Clerk's Office—a vestige of the times when parties filed documents by mailing or hand-delivering paper documents to the courthouse. *See* W.D. MICH. LCIVR 5.7(d)(i)(v), Effect on Time Computation ("The additional three days to do an act or take a proceeding after service of a document applies when service is made electronically, by virtue of FED.R.CIV.P. 6(d)."). Although this rule makes little sense in the age of electronic filing and service, *see Lopez v. SSA,* 2009 WL 261191, *2 (W.D.Mich. Feb. 4, 2009) (Maloney, C.J.), this court is obligated to follow it until it is amended. Allowing the extra three days for "mailing", the plaintiff's objections were due on Monday, March 2, 2009. That deadline has passed, and neither party filed objections or sought an extension of time in which to do so.

As the United States Supreme Court held in *Peretz v. US,* 501 U.S. 923, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991),

> The statutory provision we upheld in [*United States v.*] *Raddatz* [447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ] provided for *de novo* review only when a party objected to the magistrate's findings or recommendations. *See* 28 U.S.C. § 636(b)(1). To the extent *de novo* review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties.

*Id.* at 939, 111 S.Ct. 2661 (citation and internal quotation marks omitted). *See, e.g., Johnson v. SSA,* 2007 WL 2292440, *1 (N.D.Ohio 2007) ("The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of the Report to which an objection has been made.").

Furthermore, the failure to file timely *specific* objections obviates not only *de novo* district-judge review of the R & R, but *all* district-judge review. *Nottingham v. SSA,* 2009 WL 230131, *2 (W.D.Mich.

Jan. 29, 2009) (Maloney, C.J.). Again in the words of the Supreme Court,

> In 1976, Congress amended § 101 of the Federal Magistrates Act, 28 U.S.C. § 636, to provide that a United States district judge may refer dispositive pretrial motions, and petitions for writs of habeas corpus, to a magistrate, who shall conduct appropriate proceedings and recommend dispositions. The amendments also provide that any party that disagrees with the magistrate's recommendations "may serve and file written objections" to the magistrate's report, and thus obtain *de novo* review by the district judge.

> \*　　　\*　　　\*

> Petitioner first argues that a failure to object waives only *de novo* review, and that the district judge must still review the magistrate's report [regarding the case–dispositive matters listed in § 636(b)(1)(A) ] under some lesser standard. However, § 636(b)(1)(C) simply does not provide for such review. This omission does not seem to be inadvertent, because Congress provided for a "clearly erroneous or contrary to law" standard of review of a magistrate's disposition of certain pretrial matters in § 636(b)(1)(A) [essentially, non-dispositive motions]. Nor does petitioner point

to anything in the legislative history of the 1976 amendments mandating review under some lesser standard. *We are therefore not persuaded that the statute requires some lesser review by the district court when no objections are filed.* *Thomas v. Arn,* 474 U.S. 140, 141–42, 149–50, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (emphasis added, legislation citation omitted).

In any event, the court finds the R & R's outcome and rationale to be sound.[1] For the reasons explained by the R & R, substantial evidence in the record supported the ALJ's finding that Love experienced a medical improvement in his condition, even if the ALJ arguably failed to fully discuss that evidence on this issue, *see* R & R at 904–05. Second, even if the ALJ erred by finding Love disabled at step 2 (because he met Listing of Impairments § 1.02) from August 1, 2001 through April 30, 2003, instead of continuing to analyze his residual functional capacity ("RFC") as of May 1, 2003; such error was harmless because the evidence did not support the notion that Love had a greater RFC on May 1, 2003 than during the earlier period, *see* R & R 905–06.

Third, Love's complaint about the ALJ's rejection of his treating physician's opinion

---

**1.** Accordingly, district judges in our circuit routinely adopt R & Rs without additional written analysis where the parties have not timely and specifically objected:

> "It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo *or any other standard,* when neither party objects to those findings." \* \* \* Because neither party filed timely objections to [the R & R] ... this Court need not conduct a review.

*Russell v. Caruso,* 2007 WL 3232126, \*2 n. 3 (W.D.Mich.2007) (Maloney, J.) (quoting *Brown v. US,* 2007 WL 2156283, \*1 (E.D.Mich.2007) (Gadola, J.)) (quoting *Thomas,* 474 U.S. at 150, 106 S.Ct. 466).

*See also Lewis v. SSA,* 2008 WL 3875403, \* 1–2 (W.D.Mich. Aug. 15, 2008) (Maloney, C.J.); *Veltkamp v. SSA,* 528 F.Supp.2d 716, 718 n. 2 (W.D.Mich.2007) (Maloney, J.);

*Hart v. Ridge Tool Co.,* 2007 WL 1983688, \*2 (N.D.Ohio 2007) (Nugent, J.); *Montalvo v. GMC,* 2006 WL 1888704, \*1 (N.D.Ohio 2006) (Zouhary, J.) ("Neither party objected.... \* \* \* Thus, the Court declines to review the Magistrate's report."); *Wallace v. Jackson,* 2006 WL 467915, \*1 (E.D.Mich.2006) (Gadola, J.); *Tangwall v. Robb,* 2003 WL 23142190, \*1 (E.D.Mich.2003) (Lawson, J.) (after untimely objections, court stated, "the failure to object to the magistrate judge's report releases the Court from its duty to independently review the motion.").

fails because he fails to identify the specific opinion in question, and because substantial evidence in the record supported the ALJ's decision not to accord controlling weight to the treating physician's opinion. Namely, some of her conclusions were internally inconsistent, and her opinion was contradicted by several physical examinations and by Love's own reports that medication was sufficiently managing his pain during the relevant period, R & R at 906–07. *See Andreas v. SSA*, 2009 WL 427377, *3 (W.D.Mich. Feb. 18, 2009) (Maloney, C.J.) ("The ALJ's second reason for rejecting [treating physician]'s disability opinion was that it was contradicted by ... an MRI ... show[ing] that Andreas suffered only mild shoulder impingement syndrome, which would not be disabling. Andreas has not explained how one can reconcile [treating physician]'s diagnosis of *acute* impingement syndrome with this MRI, and she presents no authority that it is error for an ALJ to favor an objective medical test result over a physician's contrary opinion—even a treating physician.").

Moreover, treating physician Dr. Peterson gave postural limitations in areas where she had not tested Love's abilities. That could reasonably lead the ALJ to conclude not only that Dr. Peterson's opinion was not entitled to controlling weight in these specific areas, but also that Dr. Peterson was not worthy of credence generally. *Cf. Andreas*, 2009 WL 427377 at *3 ("the ALJ found that 'while [treating physician] asserted that plaintiff was also suffering from chronic fatigue syndrome and fibromyalgia, the doctor's treatment notes indicate that he never diagnosed or treated Plaintiff for any such impairments.' * * * The absence of such evidence can support the inference that [treating physician] either was making a diagnosis that he knew he had no basis for—and inference that can appropriately lead an ALJ to find [treating physician] not credible

across the board, not merely unpersuasive or unsupported on the particular CFS/fibromyalgia diagnoses themselves.").

Fourth, however, the Magistrate Judge is also correct that substantial evidence in the record did not support the ALJ's determination that Love could perform his past relevant work or that he could perform a significant number of other available jobs. Because the ALJ's hypothetical question to the vocational expert incorporated an unsupportable RFC finding—that Love can carry twenty pounds, despite his undisputed need to use a "hand-held assistive device" to walk—the vocational expert's resultant opinion was not competent substantial evidence to support the ALJ's ultimate decision. *See Veltkamp v. SSA*, 528 F.Supp.2d 716, 727 (W.D.Mich.2007) (Maloney, J.) (The VE "testified that if limited to the extent recognized by the ALJ, Plaintiff could still perform his past relevant work as a handyman and service representative. However * * * the hypothetical questions [to the VE] w[ere] based upon ... an improper RFC determination. Accordingly, the ALJ's conclusion that Plaintiff can perform his past relevant work despite his limitations, is supported by less than substantial evidence.") (citing *Cline v. SSA*, 96 F.3d 146, 150 (6th Cir. 1996)).

Remand is necessary for the ALJ to make a valid RFC determination and then conduct a step-five analysis (including hypothetical question to a vocational expert) which incorporates that valid RFC determination. *See, e.g., Benton v. SSA*, 511 F.Supp.2d 842 (E.D.Mich.2007) (Victoria Roberts, J.) (remanding for ALJ to determine whether jobs existed that were suitable in light of a correct statement of the claimant's RFC, which must take account of his "moderate" limitations in "concentration, persistence or pace"); *Deihl v. SSA*, 2008 WL 408463, *6 n. 7 (W.D.Mich.

Feb. 12, 2008) (Maloney, C.J.) (discussing *Lancaster v. SSA,* 228 Fed.Appx. 563 (6th Cir.2007), where "our Circuit held that the ALJ erred ... by allowing the VE to formulate his assessment of the claimant's RFC based on the mistaken belief that claimant was 'mildly' rather than 'moderately' restricted in his ability to interact appropriately with the general public. * * * [T]he ALJ on remand would have to obtain an RFC assessment from the VE that was based on a hypothetical accurately incorporating the claimant's impairments.").

### ORDER

Having reviewed the complaint, the parties' briefs, and the R & R, and having received no objections, the R & R [document # 12] is **ADOPTED.**

The Commissioner's denial of DIB and SSI benefits is **VACATED.**

Pursuant to 42 U.S.C. § 405(g) sentence four, this case is **REMANDED** to the Commissioner for further consideration and fact-finding in accordance with this opinion and the R & R.

As required by FED.R.CIV.P. 58, judgment for the plaintiff shall be entered by a separate document issued contemporaneously herewith.[2]

This court does **NOT** retain jurisdiction.[3] *See Shalala v. Schaefer,* 509 U.S. 292, 296–97, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) (Scalia, J.) (a district court which remands under sentence four may not retain jurisdiction, and must enter a final judgment affirming, modifying or reversing the Commissioner's decision); *Marshall v. SSA,* 444 F.3d 837, 841 (6th Cir.2006) (Richard Allen Griffin, J.) ("A 'sentence-four' remand results in the immediate entry of judgment (and relinquishment of jurisdiction) by the District Court, whereas in the 'sentence-six' remand[4] context judgment is not entered (and the District Court retains jurisdiction) until post-remand agency proceedings are complete.") (citation omitted).

This case is **TERMINATED** and **CLOSED.**

**This order is final, but it is not appealable.** *See Southall v. City of Grand Rapids,* 2008 WL 4739163, *3 (W.D.Mich. Oct. 29, 2008) (Maloney, C.J.) (" '[A] party's failure to object to the recommendations of a magistrate judge constitutes a waiver of the right to appeal.' ") (quoting *Harris v. Detroit Pub. Schs.,* 245 Fed. Appx. 437, 442 n. 6 (6th Cir.2007) (citing *U.S. v. Walters,* 638 F.2d 947, 949–50 (6th Cir.1981))); *see also Sarampote v. White,* 2009 WL 125036, *8 (W.D.Mich. Jan. 16,

---

**2.** "A sentence four remand is a judgment for the plaintiff." *Siuta v. SSA,* 2009 WL 275732, *1 (E.D.Mich. Feb. 5, 2009) (citing *Shalala,* 509 U.S. 292 at 302, 113 S.Ct. 2625).

**3.** The court need not retain jurisdiction to entertain a possible application for attorney fees under the Equal Access to Justice Act ("EAJA"). "[O]ne does not become a prevailing party merely by obtaining a remand for further proceedings before the agency from which he appealed." *Veltkamp v. SSA,* 531 F.Supp.2d 810, 813 (W.D.Mich.2007) (Maloney, J.) (citing *Marshall v. SSA,* 444 F.3d 837, 840 (6th Cir.2006) (Griffin, J.) (citing *Sullivan v. Hudson,* 490 U.S. 877, 887, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989))).

**4.** Sentence-six remands are authorized in only two situations: where the Commissioner requests a remand before answering the complaint, or where the plaintiff has adduced new, material evidence that he had good cause for not introducing to the agency previously. *Marshall,* 444 F.3d at 841 n. 2 (citing *Shalala,* 509 U.S. at 297 n. 2, 113 S.Ct. 2625); *see, e.g., Newsome v. SSA,* 528 F.Supp.2d 733, 736 (W.D.Mich.2007) (Maloney, J.) (discussing how to determine whether evidence is "new" and "material" for this purpose). Hence sentence six is inapposite here.

2009) (Quist, J.) and *Isaacson v. Cliffs River Marina*, 2009 WL 103959, *2 (W.D.Mich. Jan. 13, 2009) (Bell, J.) and *Robinson v. Bergh*, 2009 WL 33479, *4 (W.D.Mich. Jan. 5, 2009) (Edgar, J.) (all citing *Thomas* and *Walters* ).[5]

### REPORT AND RECOMMENDATION

ELLEN S. CARMODY, United States Magistrate Judge.

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security that Plaintiff was entitled to Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act from August 1, 2001, through August 30, 2003, but not thereafter. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).**

### STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir.1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir.1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir.1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir.1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See*

---

**5.** *See Schrader v. SSA*, 2008 WL 360649, *3 & n. 5 (W.D.Mich. Feb. 7, 2008) (Maloney, J.) (citing, *inter alia, Ramjit v. Moore*, 243 Fed. Appx. 103, 104 (6th Cir.2007) (p.c.) (Griffin *et al.*) ("respondent waived this issue due to his failure to object on this ground to the [R & R]") (citing *Thomas*, 474 U.S. at 155, 106 S.Ct. 466)); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir.2006) ("Frontier did not file an objection to the default entry within ten days of the magistrate's [R & R]. * * * Frontier's silence constitutes a waiver of the right to appeal the entry of default."); *US v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) ("Sullivan failed to file objections to the magistrate judge's findings with the district court and, as a result, has waived any challenge to the district court's denial of his motion to suppress the identification evidence.").

*Richardson v. Sec'y of Health and Human Services,* 735 F.2d 962, 963 (6th Cir.1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle,* 998 F.2d at 347; *Mullen,* 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 44 years of age at the time of the ALJ's decision. (Tr. 21, 68). He possesses a General Equivalency Diploma (GED) and worked previously as an assembler, a machine operator, and a parts inspector. (Tr. 20, 97–103, 222).

Plaintiff applied for benefits on October 14, 2004, alleging that he had been disabled since October 16, 1999, due to a leg injury. (Tr. 68–70, 80, 136–38). Plaintiff subsequently amended the onset date of his disability to August 13, 2001. (Tr. 226). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 32–48). On June 1, 2007, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, Rich Riedl. (Tr. 218–66). In a written decision dated August 7, 2007, the ALJ determined that Plaintiff was entitled to disability benefits from August 1, 2001, through August 30, 2003, but not thereafter. (Tr. 13–21). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 3–5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On October 16, 1999, Plaintiff was involved in a motorcycle accident in which he suffered "severe" fractures of his right femur, tibia, and fibula. (Tr. 149). Two days later, Dr. Yousif Hamati performed surgery on Plaintiff's right leg. (Tr. 149–50). Plaintiff underwent a second surgical procedure on January 7, 2000, also performed by Dr. Hamati. (Tr. 146).

Following a March 20, 2000 examination, Dr. Hamati reported that Plaintiff was "healing pretty good." (Tr. 144). On June 19, 2000, Dr. Hamati reported that Plaintiff was "doing all right." (Tr. 143). The doctor reported that "it is time for [Plaintiff] to start going back to work," but that he "should have a sit/stand option." (Tr. 143). Plaintiff later quit his job "due to the pain," but also acknowledged that "his company was about to close down when he quit." (Tr. 151).

On January 21, 2005, Plaintiff participated in a consultive examination conducted by Dr. Donald Sheill. (Tr. 151–54). Plaintiff reported that because he occasionally trips, as a result of his leg injury, he uses a cane. (Tr. 151). Plaintiff reported that "most of his pain" was in his right knee and calf, but that he was also experiencing "low back pain that seems to be worsening over time." (Tr. 151). Plaintiff reported that he experiences a "noticeable improvement" in his pain when he takes over-the-counter ibuprofen. (Tr. 151).

The doctor observed that Plaintiff experiences leg length discrepancy. (Tr. 152). Plaintiff walked with a "moderately unsteady" gait. (Tr. 152). An examination of his lower right leg revealed a "mild valgus deformity as well as toeing in of 20

degrees." (Tr. 152). Plaintiff reported that knee motion was "uncomfortable," but an examination revealed no evidence of knee joint tenderness. (Tr. 152). Plaintiff was unable to heel or toe walk, but the doctor reported that "it is unclear if this is pain limited or due to weakness." (Tr. 152). An examination of Plaintiff's hands reformed no evidence of atrophy or deformity, and Plaintiff exhibited 5/5 grip strength, as well as normal dexterity. (Tr. 152). Dr. Sheill concluded that Plaintiff suffered from "several functional difficulties." (Tr. 152). The doctor, however, did not identify what these difficulties were or whether they impaired Plaintiff's ability to perform work activities. (Tr. 151–54).

On January 17, 2006, Plaintiff began treating with Dr. S. Maxine Peterson. (Tr. 175–76). Plaintiff reported that he was experiencing headaches and pain in his back and lower right leg. (Tr. 175). The doctor reported that Plaintiff walked with a limp and used a cane "to assist in ambulation." (Tr. 175). Plaintiff reported that he was able to manage his pain with Vicodin. (Tr. 175). The results of a physical examination were unremarkable. (Tr. 176).

Treatment notes dated February 14, 2006, indicate that Plaintiff was taking his medications as prescribed without any side effects. (Tr. 173). The results of a physical examination were unremarkable. (Tr. 173). When he was examined on February 28, 2006, Plaintiff reported that he has "no complaints" and was "feeling well." (Tr. 172). The results of an examination were unremarkable and Dr. Peterson reported that Plaintiff was in no acute distress. (Tr. 172).

On March 2, 2006, Plaintiff was examined by Dr. Peterson. (Tr. 170–71). Plaintiff reported that his back and leg pain was "tolerable on pain medications." (Tr. 170). An examination of Plaintiff's back revealed no evidence of tenderness or spinal deviation. (Tr. 170). An examination of Plaintiff's extremities revealed no evidence of edema, clubbing, or cyanosis. (Tr. 170). The results of motor, sensory, and cerebellar testing were unremarkable. (Tr. 170).

On July 6, 2006, Plaintiff was examined by Dr. Peterson. (Tr. 167). Plaintiff reported that he was continuing to experience low back pain which radiated into his right lower extremity. (Tr. 167). Plaintiff characterized his activity level as "very sedentary" and reported that he was unable to stand or walk for "long periods of time." (Tr. 167). Plaintiff walked with a limp, but the results of an examination were otherwise unremarkable. (Tr. 167). Treatment notes dated July 20, 2006, reveal that Plaintiff was "feeling well" with no headaches or other complaints. (Tr. 166). Dr. Peterson observed that Plaintiff was in no acute distress. (Tr. 166).

On September 7, 2006, Plaintiff was examined by Dr. Peterson. (Tr. 209). Plaintiff reported that he was experiencing back pain and right leg pain with intermittent numbness and paresthesias. (Tr. 209). Plaintiff reported that he was "tolerating" his pain with Vicodin. (Tr. 209). Plaintiff experienced "difficulty" squatting and stooping, but exhibited 5/5 strength in his lower extremities. An examination of Plaintiff's back revealed no evidence of tenderness. (Tr. 209).

On September 25, 2006, Dr. Peterson completed a report regarding Plaintiff's functional capacity. (Tr. 202–05). The doctor reported that during an 8–hour workday Plaintiff can sit and stand/walk for "less than 2 hours" each. (Tr. 204). The doctor reported that Plaintiff required a sit/stand option. (Tr. 204). Dr. Peterson reported that Plaintiff can occasionally lift/carry less than 10 pounds, rarely lift/carry 10–20 pounds, and can never

lift/carry 50 pounds. (Tr. 204). The doctor also reported that Plaintiff can rarely twist, stoop, crouch, squat, or climb stairs. (Tr. 205).

On November 7, 2006, Plaintiff was examined by Dr. Peterson. (Tr. 208). Plaintiff reported that he was continuing to experience low back pain which radiated into his right lower extremity. (Tr. 208). The doctor observed that Plaintiff was "continuing to use [a] cane to assist in ambulation." (Tr. 208). Dr. Peterson continued to prescribe Vicodin for Plaintiff's pain. (Tr. 208).

On November 16, 2006, Plaintiff participated in a series of x-rays. (Tr. 210–14). Plaintiff's right femur was observed to be "fairly well healed with mature bone formation bridging the fracture site." (Tr. 210). There was no evidence of acute osseous abnormality. (Tr. 210). X-rays of Plaintiff's lumbosacral spine revealed only "mild degenerative changes at the thoracolumbar junction." (Tr. 211). X-rays of Plaintiff's right hip revealed "moderate" osteoarthritis. (Tr. 212). X-rays of Plaintiff's right tibia and fibula revealed "satisfactory healing" with "stable alignment." (Tr. 213). X-rays of Plaintiff's right knee revealed "minimal" degenerative changes. (Tr. 214).

On February 27, 2007, Plaintiff was examined by Dr. Peterson. (Tr. 217). Plaintiff reported that he was continuing to experience low back pain which radiated into his right lower extremity. (Tr. 217). Plaintiff described his activity level as "very sedentary" and reported that he "avoids prolonged standing or walking." (Tr. 217). Plaintiff also reported that his pain was "tolerable" so long as he takes his medication. (Tr. 217).

At the June 1, 2007 administrative hearing, Plaintiff testified that he experiences difficulty when attempting to walk without using a cane. (Tr. 231–32). Plaintiff reported that he was still suffering pain in his back and right lower extremity. (Tr. 236). Plaintiff testified that he can walk "about half a block" if he uses his cane. (Tr. 241–42). He reported that he can lift a gallon of milk, but cannot lift 20 pounds. (Tr. 248). Plaintiff testified that he is unable to perform household chores or yard work because of his pain. (Tr. 253).

## ANALYSIS

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). If a claimant is found to be disabled during this five-step process, the ALJ must determine whether

---

**1.** 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

 2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

 4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

 5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

the claimant's disability continues through the date of the decision or whether the claimant is instead only entitled to a closed period of disability. This is accomplished by applying the medical improvement standard articulated at 20 C.F.R § 404.1594 (for DIB claims) and 20 C.F.R. § 416.994 (for SSI claims). *See Mendoza v. Apfel*, 88 F.Supp.2d 1108, 1108–13 (C.D.Cal.2000) (citations omitted) (recognizing that the "medical improvement standard applies to cases ... involving a closed period of disability"); *Johnson v. Astrue*, 2008 WL 320059 at *1–2 (W.D.Okla., Jan. 4, 2008) (citation omitted) (same).

With one exception[2], the medical improvement analysis is the same for DIB and SSI claims and involves the following steps: (1) does the claimant have an impairment or combination of impairments that meets or equals in severity a listed impairment; (2) has the claimant experienced "medical improvement"[3] in his condition; (3) has the claimant's medical improvement resulted in an increase of his residual functional capacity (RFC); (4) are the claimant's current impairments in combination severe; (5) if the claimant's current impairments are severe, the ALJ must determine if the claimant's RFC precludes the performance of his past relevant work, if not the claimant will be found to not be disabled; and (6) if the claimant's RFC does preclude the performance of his past relevant work, the ALJ must determine whether there exists other work which the claimant can perform despite his limitations. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5).

With respect to the time period from August 1, 2001, through April 30, 2003, the ALJ determined that Plaintiff suffered from the following severe impairment— status post severe leg fracture with two surgical repairs. (Tr. 17). The ALJ found that this impairment satisfied Section 1.02 of the Listing of Impairments, which addresses "major dysfunction of a joint(s)." (Tr. 17). Thus, the ALJ found that Plaintiff was disabled from August 1, 2001, through April 30, 2003. (Tr. 18). As for the time period from May 1, 2003, through August 7, 2007 (the date of the ALJ's decision), the ALJ found that Plaintiff experienced a medical improvement in his condition that enabled him to perform his past relevant work. (Tr. 18–20). Accordingly, the ALJ concluded that Plaintiff's disability ended as of May 1, 2003.

#### a. The ALJ's Finding of Medical Improvement

Plaintiff first asserts that the ALJ's determination that he experienced a medical improvement in his condition is supported by insubstantial evidence.

 In support of his finding that Plaintiff experienced a medical improvement in his condition, the ALJ indicated that Plaintiff's pain was controlled with medication. (Tr. 18). The ALJ also observed that Dr. Hamati, on October 28, 1999, had indicated that Plaintiff would be "disabled for at least 18 months." (Tr. 145). While this particular aspect of the ALJ's decision is not particularly well-written, the Court nonetheless finds that there exists substantial evidence to support the ALJ's con-

---

**2.** The medical improvement analysis applicable to DIB claims also asks whether the claimant is performing substantial gainful activity, which is not relevant in this case. *See* 20 C.F.R. § 404.1594(f)(1).

**3.** Medical improvement is defined as "any decrease in the medical severity" of the impairments on which the determination of disability was based. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).

clusion that Plaintiff experienced a medical improvement in his condition.

As detailed above, Dr. Hamati reported that Plaintiff's surgeries were successful and that he could return to work with a sit/stand option. Plaintiff repeatedly indicated that his pain was controlled with medication. The results of physical examinations consistently revealed the absence of abnormal findings. X-rays failed to reveal any significant abnormality. The medical evidence overwhelmingly reveals that Plaintiff experienced an improvement in his condition.

■ The ALJ's failure to discuss some of this evidence in the context of whether Plaintiff experienced a medical improvement of his impairment does not warrant a reversal of the decision. To the extent that the ALJ failed to discuss the evidence supporting this conclusion in the section of his opinion in which he makes this determination, the Court notes that such evidence is discussed elsewhere in the ALJ's decision. As discussed below, the ALJ's ultimate determination that Plaintiff is presently capable of performing his past relevant work is supported by substantial evidence, thus a remand in this matter would constitute a waste of scarce administration resources. See *Griffeth v. Commissioner of Social Security,* 217 Fed. Appx. 425, 428 (6th Cir., Feb. 9, 2007) ("[w]e are not required to remand where to do so would be an idle and useless formality"); *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala,* 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture ...' ").

b. The Improvement in Plaintiff's Condition Resulted in an Increase in his Residual Functional Capacity

Plaintiff next argues that the ALJ erred by finding that from August 1, 2001, through April 30, 2003, Plaintiff was disabled because his condition satisfied Section 1.02 of the Listing of Impairments. Plaintiff asserts that instead of finding Plaintiff disabled at step two of the initial five-step disability analysis, the ALJ should have continued with the analysis and assessed Plaintiff's RFC. According to Plaintiff, had the ALJ properly performed this aspect of the analysis he would have been obligated later in the analytical process to compare this initial RFC finding with the RFC finding regarding Plaintiff's abilities as of May 1, 2003 (the date Plaintiff's disability ended). Plaintiff appears to suggest that this comparison would have revealed that his functional capacity had diminished as of May 1, 2003.

■ Even if the Court assumes that the ALJ erred by not initially assessing Plaintiff's RFC, such would entitle Plaintiff to relief only if his initial RFC was equally or less restrictive than his RFC as of May 1, 2003. In other words, this alleged error is significant only if Plaintiff's ability to perform work activities (as expressed through his RFC) decreased or remained the same as a result of the medical improvement he experienced as of May 1, 2003. Even though (as discussed below) the Court finds the ALJ's RFC determination to be supported by less than substantial evidence, given the severity of Plaintiff's leg injuries, the treatment he initially received to treat his injuries, and the length of time he required to recuperate, it is not reason-

able to argue that Plaintiff was capable of a greater range of activities prior to May 1, 2003, as compared to the period beginning on May 1, 2003. The Court finds, therefore, that even if the ALJ erred in this regard, any such error is harmless.

### c. The ALJ Properly Assessed the Medical Evidence

Plaintiff asserts that the ALJ erred by failing to give "good reasons" for his rationale to afford less than controlling weight to Dr. Peterson's opinions. The Court notes that Plaintiff has failed to identify any specific opinion or opinions expressed by Dr. Peterson the ALJ allegedly failed to properly evaluate. Nevertheless, contrary to Plaintiff's assertions, the ALJ assessed Dr. Peterson's opinions and provided several reasons, all supported by the evidence of record, for affording such less than controlling weight.

■ The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984).

■ Nonetheless, the ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n. 1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Hu-*

*man Services*, 25 F.3d 284, 286–87 (6th Cir.1994). However, when an ALJ chooses to accord less than controlling weight to the opinion of a treating physician, he must adequately articulate his rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544–47 (6th Cir.2004).

■ The ALJ observed that Dr. Peterson "gives [Plaintiff] postural limitations in areas where there is no evidence she tested his abilities." (Tr. 20). Plaintiff does not dispute this, but instead suggests that his limitations were so obvious that the doctor was not required to actually test his functional abilities. The ALJ properly noted that "some of [the doctor's] conclusions contradict her own findings," as well as other evidence of record. (Tr. 20). The ALJ also observed that Dr. Peterson's opinion that Plaintiff experiences severe limitations is contradicted by the results of numerous physical examinations, as well as Plaintiff's reports that his pain is sufficiently managed with medication. (Tr. 20). In sum, there exists substantial evidence to support the ALJ's decision to accord less than controlling weight to Dr. Peterson's opinion.

### d. The ALJ's Determination that Plaintiff Could Perform his Past Relevant Work, or in the Alternative, that there Exists a Significant Number of Jobs which Plaintiff can Perform Consistent with his RFC is not Supported by Substantial Evidence

■ The ALJ found that as of May 1, 2003, Plaintiff retained the ability to perform a range of light work, as detailed below. Finding that Plaintiff's RFC did not preclude the performance of his past relevant work, the ALJ concluded that Plaintiff was not disabled. Plaintiff asserts that this conclusion is not supported

by substantial evidence. The Court agrees.

The ALJ found that as of May 1, 2003, Plaintiff was capable of performing work, subject to the following limitations: (1) he can lift and carry up to 20 pounds occasionally and 10 pounds frequently; (2) he can stand and/or walk for about six hours during an 8–hour workday with normal breaks; (3) he requires a "hand-held assistive device" to ambulate; (4) he can sit for about six hours during an 8–hour workday; (5) he requires a sit-stand option; (6) he can occasionally balance, stoop, kneel, crawl, and climb ramps/stairs; and (7) he can never crouch or climb ladders, ropes, or scaffolds. (Tr. 18). The Court discerns a fundamental illogic to this determination. The Court does not doubt that Plaintiff can *lift* 20 pounds, but fails to comprehend how Plaintiff can *carry* 20 pounds if he requires a "hand-held assistive device" to ambulate. The ALJ has not addressed the illogic of this conclusion. The Court finds, therefore, that the ALJ's RFC determination is not supported by substantial evidence.

The vocational expert testified that given Plaintiff's RFC, Plaintiff could perform his past relevant work. The vocational expert further testified that based on Plaintiff's RFC there existed a significant number of jobs which Plaintiff could perform despite such limitations. However, the ALJ's RFC determination is not supported by substantial evidence. Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 150 (6th Cir.1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's,* 17 F.3d 171, 176 (6th Cir.1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist *compelling* evidence that Plaintiff is disabled. The Court recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings, including but not necessarily limited to, a determination of Plaintiff's RFC and whether such precludes the performance of his past relevant work or any other work which exists in significant numbers.

### *CONCLUSION*

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).**

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

Date: February 10, 2009